Jordana A. Garellek
NUTTER MCCLENNEN & FISH, LLP
655 Third Avenue
New York, NY 10017
Telephone:  (646) 440-8000
jgarellek@nutter.com

Benjamin M. Stern (*pro hac vice* forthcoming)
NUTTER MCCLENNEN & FISH, LLP
155 Seaport Boulevard
Boston, MA 02210
Telephone:  (617) 439-2000
bstern@nutter.com

Attorneys for Plaintiff Dean & DeLuca
Brands, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEAN & DELUCA BRANDS, INC., <br><br>       Plaintiff, <br><br>       v. <br><br> FIRE BRANDS INNOVATION, LLC and <br> VILLAGE SUPER MARKET, INC., <br><br>       Defendants. | Case No.  _____ <br><br><br> **COMPLAINT** |

Plaintiff Dean & DeLuca Brands, Inc. ("Plaintiff"), by its attorneys, Nutter McClennen & Fish, LLP, as and for its Complaint against Defendants Fire Brands Innovation, LLC ("Fire Brands") and Village Super Market, Inc. ("Village Super Market"; together with Fire Brands, "Defendants"), alleges upon knowledge as to its own acts and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1.    This is an action for declaratory relief, trademark infringement, trademark dilution,

false designation of origin, unfair competition, deceptive acts and practices, false advertising, and related claims arising from Defendants' unauthorized use of Plaintiff's famous and federally registered DEAN & DELUCA Marks (as defined below), including in connection with food products that Defendants package and sell at retail stores in this District and elsewhere in the United States.

2.     Plaintiff owns the iconic DEAN & DELUCA brand, one of the most recognized names in gourmet food and specialty retail in the United States.  Plaintiff also owns multiple incontestable federal trademark registrations for the DEAN & DELUCA Marks, which have been used continuously in commerce in the United States since at least 1977.

3.     Without authorization, license, or consent from Plaintiff, Defendants—with full knowledge of Plaintiff's ownership of the DEAN & DELUCA Marks and brand—are packaging, marketing, and selling food products bearing infringing DEAN & DELUCA Marks at retail supermarkets that Village Super Market (directly or indirectly) owns, operates, or controls—including Gourmet Garage and Fairway Market stores in Manhattan, and ShopRite stores in several states.

4.     On information and belief, Defendants are also distributing and selling food products bearing infringing DEAN & DELUCA Marks at third-party retail supermarkets, including at least one location in Brooklyn, New York.  On information and belief, Defendants intend to expand both the number of locations offering the infringing products and the categories of products sold under the infringing marks.

5.     Defendants' wrongful acts extend beyond the unauthorized use of Plaintiff's DEAN & DELUCA Marks on product packaging.  In a deliberate effort to trade on the goodwill, recognition, and reputation of the DEAN & DELUCA Marks and brand, Defendants' packaging

2

includes a QR code that directs consumers to website content invoking the history of Plaintiff's

DEAN & DELUCA Marks and brand, which intentionally and falsely suggests a connection

between Defendants and Plaintiff:



6.      Defendants have no authority to use the DEAN & DELUCA Marks, have no

relationship—contractual or otherwise—with Plaintiff, and have no legitimate connection to the

DEAN & DELUCA brand.

7.      In an effort to cement their unauthorized use of the DEAN & DELUCA Marks and

brand, Fire Brands—a wholly owned subsidiary of Village Super Market that functions as the

trademark, brand development, and licensing arm of Village Super Market's retail operations—

filed a petition with the Trademark Trial and Appeal Board ("TTAB") seeking cancellation of

Plaintiff's DEAN & DELUCA trademark registrations.    Fire Brands simultaneously filed

trademark applications with the United States Patent and Trademark Office ("USPTO") seeking

to register DEAN & DELUCA as a trademark for Defendants' own use.  This conduct reflects a deliberate strategy to appropriate the goodwill and source-identifying power of Plaintiff's famous DEAN & DELUCA Marks and brand.  That strategy has already been rebuffed:  the USPTO has issued non-final office actions refusing registration of Fire Brands' applications, finding that Defendants' infringing marks and Plaintiff's DEAN & DELUCA Marks are "identical in appearance, sound, and meaning" and that confusion is likely.

8.     This is not the first time Defendants have engaged in this scheme with respect to other iconic New York food brands.  Fire Brands previously obtained cancellation of a STAGE DELI trademark registration owned by the renowned-but-now-closed New York City delicatessen of the same name, then pursued its own application to register the STAGE DELI mark.  In February 2026, Fire Brands acquired a trademark registration for a RUBY FOO'S mark, which was previously associated with the well-known-but-now-closed Asian restaurant in New York City of the same name.  Defendants' stratagem is to identify historically prominent food brands, seek to acquire or appropriate trademark rights in those brands, and use them on products sold at Village Super Market's retail supermarket locations (and elsewhere).  The DEAN & DELUCA Marks are the latest—and most prominent—target of that pattern.

9.     Defendants' misappropriation of the DEAN & DELUCA Marks was driven by a commercial need.  Village Super Market operates its retail stores as a member of Wakefern Food Corp. ("Wakefern"), a retailer-owned cooperative that owns the Fairway, Gourmet Garage, and ShopRite marks.  On information and belief, after a dispute between Village Super Market and Wakefern that arose in or about August 2025 over trademark and other agreements, Village Super Market lost the ability to use—or ceased using—the Wakefern-owned Fairway and Gourmet Garage marks on the "in-house" products offered at Village Super Market's retail stores.  Rather

4

than develop their own brand for Village Super Market's "in-house" products, Defendants misappropriated the DEAN & DELUCA Marks and brand. On information and belief, the products Defendants now sell under the infringing DEAN & DELUCA Marks are substantially the same products—prepared at the same commissary facilities and using the same processes— that were previously sold under the "in-house" Gourmet Garage mark and brand. Defendants appropriated Plaintiff's famous marks because they needed a replacement "in-house" brand that consumers would recognize.

10.    Defendants' wrongful conduct—arrogating Plaintiff's famous DEAN & DELUCA Marks and brand to fill a gap in their product line, applying those marks to the same mass-market products previously sold under a different mark they could no longer use, and distributing those products at (and beyond) Village Super Market's own locations—is likely to cause confusion, mistake, and deception among consumers as to the source, sponsorship, affiliation, and origin of Defendants' products. That harm is magnified by the fact that Defendants' infringing products are being sold in the very market—the New York City metropolitan area—where the DEAN & DELUCA brand originated and where it retains substantial residual goodwill and consumer recognition. To remedy the wrongs Defendants have inflicted, Plaintiff seeks injunctive relief, damages, and all other relief to which it is entitled.

## THE PARTIES

11.    Plaintiff Dean & DeLuca Brands, Inc. is a Delaware corporation with a current principal place of business located at 125 East 85th Street, New York, NY 10024. Plaintiff is a wholly owned subsidiary of Dean & DeLuca, Inc., also a Delaware corporation.

12.    Defendant Fire Brands Innovation, LLC is a New Jersey limited liability company with a principal place of business located at 733 Mountain Avenue, Springfield, NJ

5

07081.  According to New Jersey Secretary of State's records, Fire Brands was formed on December 23, 2019, and its sole member is Defendant Village Super Market, Inc.

13.      Fire Brands files trademark applications for brand names and food concepts that are then used on products at Village Super Market's retail supermarket locations.  For example, Fire Brands filed a trademark registration application for THE SHUK KOSHER KITCHEN for retail store services in the field of groceries, bakery goods, and prepared foods; Village Super Market operates a SHUK KOSHER KITCHEN concept at its ShopRite stores.  Fire Brands has also filed trademark applications covering a broad range of food products and services sold at Village Super Market's retail locations, including frozen chicken, processed cauliflower, snack foods, bread, pizza, sandwich wraps, marinades, sauces, salad dressings, dried fruits and vegetables, packaged meats, yogurt, catering services, coffee bars, restaurant services, and retail store services in the field of prepared foods.  These filings confirm that Fire Brands functions as the trademark, brand development, and licensing arm of Village Super Market's retail operations.  Fire Brands filed its DEAN & DELUCA trademark applications and cancellation petition described herein, and has participated in and/or facilitated the adoption and use of the infringing DEAN & DELUCA Marks on food products sold at Village Super Market's retail stores (and elsewhere).  The precise nature and scope of Fire Brands' role in the infringing conduct alleged herein—including whether Fire Brands holds, licenses, or otherwise controls the use of the infringing marks and whether Fire Brands directed, authorized, or participated in the production, packaging, marketing, or sale of the infringing products—is known to Defendants and will be established through discovery.  On information and belief, Fire Brands has licensed, authorized, sanctioned, or otherwise permitted Village Super Market and its affiliates to use the infringing DEAN & DELUCA Marks on the food products described herein, consistent with Fire Brands'

established role as the trademark, brand development, and licensing arm of Village Super Market's retail operations. Village Super Market's use of the infringing marks therefore inures to Fire Brands' benefit and constitutes use in commerce by Fire Brands for purposes of 15 U.S.C. § 1114 and § 1125.

14.     Defendant Village Super Market, Inc. is a New Jersey corporation with a principal place of business located at 733 Mountain Avenue, Springfield, NJ 07081. On information and belief, Village Super Market directly or indirectly owns, operates, and/or controls retail supermarkets under the Gourmet Garage, Fairway Market, and ShopRite banners, including stores in this District. On information and belief, Village Super Market also owns and operates, directly or indirectly, a commissary in the Bronx that makes and packages food items that are sold in Village Super Market's retail locations (and elsewhere).

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over Plaintiff's federal trademark claims, which arise under 15 U.S.C. §§ 1114, 1119, and 1125.

16.     This Court has original jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, and 1338. This Court has jurisdiction over Plaintiff's claim for declaratory relief pursuant to 28 U.S.C. §§ 2201–2202. This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

17.     Diversity of citizenship under 28 U.S.C. § 1332 also exists between Plaintiff and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff is a Delaware corporation with a principal place of business in New York. Defendant Village Super Market, Inc. is a New Jersey corporation with its principal place of business in New Jersey. Defendant Fire Brands Innovation, LLC is a citizen of New Jersey because its sole

7

member, Village Super Market, Inc., is a New Jersey corporation.

18.     This Court has personal jurisdiction over Defendants because they transact business in this District, have committed acts of trademark infringement and unfair competition in this District, and have caused injury to Plaintiff in this District—including because Village Super Market owns, operates, or controls Gourmet Garage and Fairway Market store locations in this District at which the infringing products have been sold to consumers, and because Village Super Market (directly or indirectly) has sold infringing products to third-party retailers who, in turn, sell those products to consumers in this District.  Fire Brands is also subject to personal jurisdiction in this District because, on information and belief, it participated in, directed, and/or authorized the adoption and use of the infringing DEAN & DELUCA Marks on products sold at retail locations in this District; and because it has filed trademark applications with the USPTO and a cancellation petition with the TTAB in furtherance of the infringing conduct occurring in this District.

19.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events giving rise to the claims occurred in this District, Defendants are subject to personal jurisdiction in this District, and Defendants regularly conduct business in this District.

**FACTUAL BACKGROUND**

**A.     Dean & DeLuca's Iconic Brand**

20.     DEAN & DELUCA is a storied American luxury food and lifestyle brand founded in New York City in 1977 by Joel Dean, Giorgio DeLuca, and Jack Ceglic.  Since its founding, the DEAN & DELUCA Marks and brand have been used in commerce in the United States in connection with goods, services, and branded retail offerings provided by Plaintiff and its related companies, as well as authorized licensed operations—all under Plaintiff's ownership and control

8

of the DEAN & DELUCA Marks.

21.     DEAN & DELUCA's original SoHo store, at 121 Prince Street between Greene and Wooster Streets in Manhattan, quickly became known for bringing together exceptional gourmet foods, imported specialty products, and distinctive merchandising.  From the start, DEAN & DELUCA was not merely a retail store, but a curated brand experience that helped define—and is widely credited as pioneering—the modern premium food emporium.  The DEAN & DELUCA Marks and brand, and their distinctive identity, have been the subject of extensive media coverage, editorial features, and commentary in national publications, food-industry media, and cultural writing spanning decades, cementing DEAN & DELUCA's status as an iconic American brand recognized well beyond its customer base.

22.     As the brand grew, DEAN & DELUCA expanded within Manhattan beyond its original SoHo roots, including through a major flagship market at Broadway and Prince Street, smaller café formats, and DEAN & DELUCA espresso bars.  The brand also expanded its own operations beyond New York into other markets in the United States, including Washington, D.C., North Carolina, Kansas, and California.

23.     DEAN & DELUCA also reached consumers nationwide through its catalog and mail-order business, which offered specialty foods, kitchenware, and gift-oriented products under the DEAN & DELUCA Marks and brand.  Through its stores, cafés, catalogs, gift business, and related channels of trade, DEAN & DELUCA became one of the most recognized luxury gourmet-food brands in the United States and developed substantial goodwill in the DEAN & DELUCA Marks and brand.  That sustained growth and national presence cemented the DEAN & DELUCA Marks and brand as iconic and deepened the goodwill associated with them.

24.     Plaintiff has also authorized use of the DEAN & DELUCA Marks and brand

9

through licensed operations in the United States and outside the United States.  That authorized use in the United States includes stores and cafés in Hawaii that continue to operate today.  Those locations include the Ritz-Carlton Waikiki, which opened in 2016, the Royal Hawaiian Center, which opened in 2017, and Kaka'ako Koula, which opened in 2024.  A large number of people who live throughout the mainland United States (and outside the United States) visit Hawaii each year—for pleasure, business, or otherwise.  The establishments in Hawaii that use the DEAN & DELUCA Marks and brand are in locations frequented by these individuals.  For example, one of the locations is inside the Ritz-Carlton Waikiki, which is a popular hotel for travelers of all types (including people who live outside the United States but who travel throughout the United States).  In addition, these Hawaii operations have an active website—available to consumers throughout the United States—that describes the licensed Hawaii locations, sells branded merchandise (including totes, kitchenware, drinkware, and gift cards) shippable nationwide, and supports takeout and catering orders for the licensed locations; the website is available at https://www.deandeluca-hawaii.com/ and its contents are incorporated herein by reference.

25.    Those authorized Hawaii operations, as well as their products and services, use the DEAN & DELUCA Marks and brand in accordance with an agreement with and authorization from Plaintiff, and subject to Plaintiff's standards, approvals, and oversight.

26.    Plaintiff's authorized use of the DEAN & DELUCA Marks in the United States, including through its licensed operations in Hawaii, has been continuous, subject to Plaintiff's quality control and oversight, and inures to Plaintiff's benefit under 15 U.S.C. § 1055.  The DEAN & DELUCA Marks have not been abandoned.

**B.    Plaintiff's DEAN & DELUCA Marks and Brand**

27.    Plaintiff owns the DEAN & DELUCA Marks and the substantial goodwill

10

associated with those marks in the United States.

28.    Plaintiff owns valid and subsisting federal trademark registrations for the mark DEAN & DELUCA on the Principal Register of the USPTO, including U.S. Registration Nos. 1,369,051; 2,037,326; 2,095,373; 2,097,891; 2,116,337; and 3,425,930 (collectively, the "DEAN & DELUCA Registrations").  True and correct copies of the DEAN & DELUCA Registrations are attached hereto as Exhibits 1-6.  The DEAN & DELUCA trademarks (including common law and all other trademark rights), the related goodwill, and the DEAN & DELUCA Registrations are referred to herein, individually and collectively, as the "DEAN & DELUCA Marks."

29.    The DEAN & DELUCA Registrations are incontestable under 15 U.S.C. § 1065, and constitute conclusive evidence of the validity of the DEAN & DELUCA Marks, Plaintiff's ownership of such marks, and Plaintiff's exclusive right to use such marks in commerce (subject only to the defenses set forth in 15 U.S.C. § 1115(b)).

30.    The DEAN & DELUCA Marks have been used in commerce in the United States continuously since at least 1977.  Over decades, the DEAN & DELUCA Marks have been used extensively in connection with gourmet food retail stores, cafés, restaurant services, specialty food products, kitchenware, mail-order and catalog services, e-commerce, and authorized licensed operations in the United States.  The DEAN & DELUCA Marks are not merely historical marks; they remain a source-identifying brand with continuing trademark significance, ongoing authorized use, and substantial residual goodwill among consumers, including particularly in the New York City metropolitan area, where the brand originated and achieved iconic status.  The brand's enduring consumer recognition is the product of nearly five decades of substantially exclusive use, extensive media attention, and a distinctive brand identity that consumers continue to associate with a single source.

31.     Through longstanding, substantially exclusive, and widespread use—as well as extensive consumer exposure, publicity, promotion, and recognition over many years—the DEAN & DELUCA Marks and brand have become highly distinctive and have acquired substantial goodwill.  Long before Defendants' acts complained of herein, the DEAN & DELUCA Marks and brand were widely recognized by the general consuming public of the United States as designating a single source.  That consumer recognition is confirmed by Defendants' own conduct: their adoption of the infringing DEAN & DELUCA Marks and brand, their filing of trademark applications seeking to claim those marks across a broad range of food products and services, and their deployment of QR-code-linked website content invoking the DEAN & DELUCA brand story.  That conduct reflects Defendants' recognition that the DEAN & DELUCA Marks and brand retain widespread consumer recognition and substantial commercial value.  The DEAN & DELUCA Marks are therefore famous within the meaning of 15 U.S.C. § 1125(c).

C.     **Defendants' Infringing Conduct**

32.     On information and belief, Village Super Market, either directly or indirectly, owns and operates Gourmet Garage and Fairway Market retail supermarkets in Manhattan, as well as a commissary/production center in the Bronx that prepares fresh deli and specialty food items for sale in those stores.  Village Super Market also owns and operates approximately 30 ShopRite retail supermarkets across New Jersey, Maryland, Pennsylvania, and New York, and is affiliated with additional retail supermarkets throughout the Northeastern United States.

33.     As described above, Wakefern owns the Fairway, Gourmet Garage, and ShopRite marks and licenses them to its cooperative members, including Village Super Market, for use with branded products.  On information and belief, Village Super Market operates retail stores under those banners pursuant to its cooperative membership in Wakefern.  In or about August 2025, a

12

dispute arose between Village Super Market and Wakefern related to certain trademark and other agreements. On information and belief, following that dispute, Village Super Market removed Fairway and Gourmet Garage marks and branding from the "in-house" products it had sold at its retail supermarkets. On information and belief, Village Super Market's continued operation of Fairway Market and Gourmet Garage retail stores reflects a separate aspect of its Wakefern cooperative-membership rights, distinct from the in-house-product trademark license at issue in the dispute. On information and belief, since the Wakefern dispute described above, Village Super Market has not used the Wakefern-owned Fairway or Gourmet Garage marks on its "in-house" product packaging. Faced with the loss of those "in-house" marks, on information and belief, Defendants began using the infringing DEAN & DELUCA Marks as replacements. The timeline is telling: the dispute with Wakefern arose in or about August 2025; Fire Brands filed its DEAN & DELUCA trademark applications and cancellation petition in November 2025; and DEAN & DELUCA-branded products appeared in Village Super Market's stores and third-party retailers by (at least) early 2026.

34.    The DEAN & DELUCA-branded products Defendants now sell are, on information and belief, substantially the same products—prepared at the same commissary facilities and using the same production processes—that Defendants previously sold under the Gourmet Garage brand name. Defendants' adoption of the infringing DEAN & DELUCA Marks was thus not an effort to build a new brand. It was a calculated decision to appropriate Plaintiff's famous marks as a ready-made substitute for the ones that Defendants lost the right to use.

35.    Without Plaintiff's authorization or consent, Defendants have marketed, distributed, and sold (at least) food products bearing infringing DEAN & DELUCA Marks at retail grocery stores in the New York City metropolitan area and elsewhere—including at Village Super

13

Market's stores and third-party retail locations to which Defendants distribute the infringing products. Those products are ordinary consumer food items sold in the kinds of retail channels in which consumers would expect goods bearing the DEAN & DELUCA Marks to originate with, be affiliated with, or be authorized by Plaintiff.

36.     On March 11, 2026, the Gourmet Garage store in Tribeca, located at 366 Broadway, New York, New York, was offering for sale numerous packaged food items bearing infringing DEAN & DELUCA Marks. Those infringing marks appeared prominently on the front of the packaging in a manner calculated to communicate to consumers that the products were genuine DEAN & DELUCA-branded goods. The products were displayed for retail sale as ordinary grab-and-go food items available for immediate consumer purchase:





37.    A Gourmet Garage employee stated that DEAN & DELUCA was allegedly a Gourmet Garage "in-house" brand, reflecting that Defendants were not presenting DEAN & DELUCA as the brand of a separate source, but instead as part of Defendants' own product offerings; that employee's statement is particularly telling in light of the Wakefern/Village Super Market dispute described above.

38.    Also on March 11, 2026, the Fairway Market location in Flatiron, at 766 Sixth Avenue, New York, New York, was offering for sale packaged food products using the infringing DEAN & DELUCA Marks, and a store employee stated that the store had been selling those DEAN & DELUCA-branded products for at least one month:





39.    The accused Fairway products used the same labeling and brand presentation as the Gourmet Garage products.  The infringing DEAN & DELUCA Marks appeared prominently on the packaging, paired with product labeling and a QR code in a format designed to present the goods to consumers as genuine DEAN & DELUCA-branded products.  As the images above show, the packaging prominently displays infringing DEAN & DELUCA Marks together with the phrase "FRESH CUT VEGETABLES" and a QR code.  The products are identified as distributed by

VSM Inc., which, on information and belief, is affiliated with and controlled by Village Super Market.  On information and belief, VSM Inc. acts as an agent of, or is otherwise controlled by, Village Super Market in connection with the distribution of the accused products, such that VSM Inc.'s conduct is attributable to Village Super Market.  Village Super Market's U.S. Securities and Exchange Commission filings disclose multiple wholly owned subsidiaries using the "VSM" prefix, including VSM NY Distribution Center LLC, VSM NY Warehouse LLC, VSM USA LLC, VSM Gourmet, LLC, and VSM NY Holdings LLC, all organized to support Village Super Market's retail operations.  On information and belief, "VSM Inc.," as identified on the product packaging, is a trade designation, predecessor name, or shorthand for one or more of the wholly owned VSM-prefixed entities described above, all of which are controlled by Village Super Market.

40.    When scanned by a smartphone or similar device, the QR code on Defendants' DEAN & DELUCA-branded packaging directs the consumer to a website at village.digiphy.it, which, on information and belief, is a domain owned, operated, or controlled by Defendants.  The following image depicts the content accessed through that QR code:



41.     The QR-code-linked content does not simply provide neutral (infringing) product information.  It improperly invokes the history and identity of the DEAN & DELUCA Marks and brand, reinforcing rather than dispelling the false impression that Defendants' products are connected with the genuine DEAN & DELUCA Marks and brand.  By pairing infringing DEAN & DELUCA Marks on the packaging with website content invoking the DEAN & DELUCA brand story, Defendants amplify the false message that their products are genuine DEAN & DELUCA products or are otherwise affiliated with or authorized by Plaintiff.

42.     Defendants' infringing use is not limited to the words "Dean & DeLuca."  The infringing marks on Defendants' product packaging and QR-code-linked website replicate the combination of typographic and design elements that consumers have associated with the commercial use of the DEAN & DELUCA Marks and brand for decades, including all-capital lettering, an ampersand symbol, a clean sans-serif typeface, and minimalist spacing and layout. That combination mirrors the presentation of the DEAN & DELUCA Marks in current authorized use, including on Plaintiff's authorized licensee's aforementioned website (https://www.deandeluca-hawaii.com/).  The degree of visual similarity between the infringing marks and the DEAN & DELUCA Marks as used in commerce—considered together with Defendants' knowledge of the DEAN & DELUCA Registrations, their filing of a cancellation petition targeting those Registrations, and their adoption of the infringing marks as a replacement for their "in-house" brand—confirms that Defendants' replication of the visual presentation of the DEAN & DELUCA Marks, as used in commerce, was intentional.

43.     Defendants are using the infringing DEAN & DELUCA Marks, along with the packaging's QR-code-linked website content, to construct a false narrative of origin, affiliation, sponsorship, and connection to Plaintiff's DEAN & DELUCA Marks and brand.  That conduct is

18

especially likely to mislead consumers because DEAN & DELUCA is a famous and distinctive gourmet-food brand associated with premium food products that originated in New York City and became recognized nationwide.  Plaintiff has no association with Defendants' website, did not authorize that QR-code-directed content, and did not authorize Defendants to use the DEAN & DELUCA Marks or brand in connection with that website content or on the infringing products to which it is attached.

44.    On information and belief, Fire Brands participated in, directed, authorized, and/or facilitated the decision to adopt and use the infringing DEAN & DELUCA Marks on products sold at Village Super Market's retail locations, including by developing, approving, or controlling the branding, packaging, labeling, and/or QR-code-linked content used in connection with those products.  Fire Brands' filing of trademark applications for DEAN & DELUCA-formative marks covering a broad range of food products and services, contemporaneous with the appearance of DEAN & DELUCA-branded products in Village Super Market's stores, supports the inference that Fire Brands played an active role in Defendants' adoption and commercial use of the infringing marks.  That pattern reflects Fire Brands' established role, described above, as the entity that files trademark applications for brand names that are then used on products sold at Village Super Market's retail locations.

45.    The appearance of infringing DEAN & DELUCA Marks on substantially similar products at different store banners—Gourmet Garage and Fairway—and at different Manhattan locations, using virtually identical labeling and the same QR code, confirms that Defendants' use of those marks was not accidental, isolated, or limited to a single store.  It is part of a coordinated effort to trade on the goodwill and reputation of the DEAN & DELUCA Marks and brand.

46.    The scope of Defendants' infringing conduct extends beyond the retail locations

that Village Super Market owns or operates.  On information and belief, by at least February 2026, packaged food products bearing infringing DEAN & DELUCA Marks—and using substantially identical packaging to the infringing products found at Gourmet Garage and Fairway Market locations—were offered for sale at The Fresh Grocer store at 523 Fulton Street, Brooklyn, New York.  On information and belief, that store is owned and operated by Inserra Supermarkets, Inc., which is a Wakefern cooperative member not affiliated with Village Super Market.  Product packaging at that location identified the products as distributed by Village Super Market or an affiliated entity.  The presence of infringing DEAN & DELUCA-branded products at a third-party retailer confirms that Defendants are distributing those products into broader retail channels beyond Village Super Market's own stores.  That distribution increases the volume of infringing goods in commerce, expands the geographic reach of the infringement, and increases the scope of consumer confusion.

47.     To make matters worse, Plaintiff has never sold, nor has it authorized any party to sell, DEAN & DELUCA-branded goods or services through mass-market grocery stores like the ones that sell Defendants' infringing products.  By selling infringing products through those sales channels, Defendants are further diminishing the DEAN & DELUCA Marks and brand, including by devaluing the premium products, packaging, and standards that consumers have been conditioned to expect from the famous DEAN & DELUCA Marks and brand.

48.     Defendants' wrongful conduct is not limited to the unauthorized application of Plaintiff's marks to their products.  The manner in which Defendants present the DEAN & DELUCA brand further degrades its value.  The DEAN & DELUCA brand was built on carefully curated, premium products and a distinctive brand experience that set it apart from ordinary grocery stores.  Defendants are using the infringing DEAN & DELUCA Marks with commodity

20

products—including ordinary pre-cut vegetables and standard fruits—packaged in standard undifferentiated plastic clamshell containers indistinguishable from generic supermarket products, and displayed on standard grocery shelves alongside mass-market store brands.  That presentation bears no resemblance to the premium curation, product selection, packaging, and retail environment that consumers have associated with the DEAN & DELUCA Marks and brand for nearly five decades.  By associating the DEAN & DELUCA Marks and brand with infringing products and packaging that do not reflect—and are inconsistent with—the premium standards that define the DEAN & DELUCA Marks and brand, Defendants are diminishing the distinctive premium associations of the DEAN & DELUCA Marks and brand, as well as the commercial value of Plaintiff's marks.

49.    On information and belief, Defendants do not intend to limit their unauthorized use of the infringing DEAN & DELUCA Marks to pre-cut vegetables at Village Super Market's grocery stores.  Defendants have already expanded that unauthorized use beyond Village Super Market's own retail locations by distributing infringing DEAN & DELUCA-branded products to at least one third-party retailer, as described above.  As reflected in the trademark applications described below, Defendants intend to use the infringing DEAN & DELUCA Marks across a broad range of packaged food products and related services, at multiple stores and banners in New York, New Jersey, Connecticut, and elsewhere.  Those applications confirm that the conduct alleged here is not isolated or accidental.  It is part of a coordinated effort to appropriate the commercial value, goodwill, and source-identifying power of the DEAN & DELUCA Marks and brand for Defendants' own benefit.

**D.    Defendants' Pattern of Trademark Misappropriation**

50.    On November 13, 2025, Fire Brands filed a petition before the TTAB seeking

21

cancellation of several of Plaintiff's DEAN & DELUCA Registrations on grounds of alleged abandonment.

51. At the same time, Fire Brands filed its own trademark applications for DEAN & DELUCA-formative marks seeking registration well beyond pre-cut vegetables. Those applications cover a broad range of goods and services, including olives, olive oil, eggs, nut butters, chicken, cheese, salads, cut fruits, cut vegetables, deli meats and cheeses, prepared meats, fish, seafood, poultry, cooked vegetables, rice, dips, coffee, chocolate, baked goods, sauces, condiments, and restaurant/café services. In doing so, Defendants seek not only to continue using Plaintiff's DEAN & DELUCA Marks and brand without authorization, but also to claim trademark rights in DEAN & DELUCA-formative marks for Defendants' commercial use. Indeed, the USPTO has issued non-final office actions refusing registration of Fire Brands' DEAN & DELUCA-formative trademark applications based on a likelihood of confusion with Plaintiff's DEAN & DELUCA Registrations. In doing so, the USPTO found that Fire Brands' marks and Plaintiff's DEAN & DELUCA Marks are "identical in appearance, sound, and meaning" and that the identity between the respective marks weighs heavily in favor of a likelihood of confusion. The USPTO's findings confirm both the continuing validity of Plaintiff's DEAN & DELUCA Registrations and the confusing similarity of Defendants' infringing marks.

52. The breadth of that intended use is underscored by the specimen Fire Brands submitted in support of at least one such trademark registration application. That specimen uses the same infringing DEAN & DELUCA-branded product presentation reflected in the above images of products at Village Super Market's retail locations, supporting the inference that Defendants are using Village Super Market's existing supermarket sales as the springboard for a broader effort not only to market goods under the infringing DEAN & DELUCA Marks and brand,

but to claim trademark rights in that brand across multiple categories of goods and services.

53. Fire Brands' role is underscored by the breadth and nature of its operations. Fire Brands develops, distributes, and markets consumer products under well-known brand names, including brand names licensed from brand owners. That business model depends on the goodwill and consumer recognition associated with established brand names—and on authorization from the brand owners. Defendants' unauthorized use of the DEAN & DELUCA Marks and brand reflects the application of that same model—exploiting the commercial value of a well-known brand name—without the authorization that legitimate brand licensing requires.

54. This is not the first time Defendants have pursued that strategy. Fire Brands previously obtained cancellation of a STAGE DELI trademark registration associated with the well-known-but-now-closed Stage Deli in Manhattan and then pursued its own application to register the STAGE DELI mark. And, on information and belief, Defendants intend to use that STAGE DELI mark on products that are marketed and sold in Village Super Market's stores (and elsewhere). The conduct alleged here follows the same playbook: target a historically well-known food brand that started in New York City but became iconic nationwide, attack the existing registration, and then seek to claim that mark and brand as Defendants' own.

55. The same counsel who represented Fire Brands in connection with the STAGE DELI cancellation and related trademark registration application also represents Fire Brands in connection with the cancellation proceeding and trademark applications directed at the DEAN & DELUCA Registrations. That continuity further supports the inference that the conduct alleged here reflects a repeated and deliberate strategy rather than an isolated dispute.

56. Defendants also pursued a similar strategy with the well-known-but-now-closed RUBY FOO'S Asian restaurant in Manhattan, whose RUBY FOO'S marks were cancelled or

abandoned.  In February 2026, Fire Brands acquired a trademark registration for a RUBY FOO'S mark.  Gourmet Garage, Fairway, and ShopRite retail supermarkets now offer RUBY FOO'S-branded meals and sushi, which Village Super Market unabashedly proclaims are "reminiscent of the former New York restaurant of the same name."

57.    Defendants' repeated conduct—acquiring or seeking trademark rights in the names of iconic food brands and marks, including RUBY FOO'S and STAGE DELI, and commencing use of those marks at Village Super Market's retail grocery locations to evoke a false connection with those brands—demonstrates a deliberate pattern and practice of trademark misappropriation.  The DEAN & DELUCA Marks are the latest target of that pattern.

E.    **Defendants' Infringement Is Willful**

58.    Defendants' infringement of the DEAN & DELUCA Marks is willful, deliberate, and in bad faith.  Defendants had actual knowledge of Plaintiff's rights before commencing the infringing conduct alleged herein.  Fire Brands' TTAB petition for cancellation expressly targets several of Plaintiff's DEAN & DELUCA Registrations, and Fire Brands' own trademark applications seek to claim the same DEAN & DELUCA Marks and brand for overlapping food products and services.

59.    Defendants' willfulness is underscored by the circumstances surrounding their adoption of the infringing DEAN & DELUCA Marks.  On information and belief, Defendants turned to the infringing DEAN & DELUCA Marks only after Village Super Market lost the ability to use—or ceased using—Wakefern-owned marks and brands on Village Super Market's "in-house" products as a result of a trademark dispute with Wakefern.  Rather than developing their own marks and branding, they instead decided to use Plaintiff's famous DEAN & DELUCA Marks as a ready-made replacement, applied the infringing marks to the same products previously sold

24

under different branding, and began distributing those infringing products to stores at and beyond Village Super Market's own retail locations—all without Plaintiff's knowledge, consent, or authorization. That sequence of events confirms that Defendants' adoption of the infringing DEAN & DELUCA Marks was a deliberate commercial decision, not an innocent or good-faith use.

60.    Defendants' willfulness is further confirmed by Fire Brands' established practice of acquiring trademark rights in iconic food brand names for use and sale at Village Super Market's retail stores, as described above. Defendants are using that same strategy against the DEAN & DELUCA Marks—while Plaintiff's registrations remain valid and in force—confirming that the infringement was part of a deliberate and coordinated effort to appropriate the DEAN & DELUCA Marks.

61.    Despite their knowledge of the DEAN & DELUCA Marks, Defendants adopted and used the infringing DEAN & DELUCA Marks on competing food products without authorization from Plaintiff. Plaintiff has contested Fire Brands' TTAB cancellation petition and Fire Brands' DEAN & DELUCA-formative trademark applications, and has publicly asserted Plaintiff's continuing rights, ownership, and authorized use of the DEAN & DELUCA Marks. Defendants have nonetheless continued their infringing conduct. Defendants' continued use of the infringing DEAN & DELUCA Marks in the face of Plaintiff's public assertion of continuing rights further confirms the willful and bad-faith nature of their conduct.

## COUNT I
### Declaratory Judgment
**(28 U.S.C. §§ 2201–2202; 15 U.S.C. § 1119)**

62.    Plaintiff repeats and incorporates by reference the allegations set forth in the preceding paragraphs, as if expressly set forth herein.

25

63. An actual and justiciable controversy exists between Plaintiff and Defendants concerning the validity, ownership, and scope of the DEAN & DELUCA Marks and Defendants' right to use or register DEAN & DELUCA-formative marks. That controversy is confirmed by Fire Brands' petition before the TTAB seeking cancellation of several of Plaintiff's DEAN & DELUCA Registrations on grounds of alleged abandonment, Fire Brands' filing of trademark applications for DEAN & DELUCA-formative marks, and the USPTO's refusal to register those applications based on a likelihood of confusion with Plaintiff's existing DEAN & DELUCA Registrations.

64. Plaintiff's DEAN & DELUCA Registrations are valid, subsisting, and incontestable. Plaintiff owns those marks and the goodwill associated with them. The DEAN & DELUCA Marks have been used continuously in commerce in the United States since at least 1977, including through Plaintiff's authorized licensed operations. The DEAN & DELUCA Marks have not been abandoned. The USPTO's refusal to register Fire Brands' DEAN & DELUCA-formative applications—finding that Defendants' infringing marks are identical to Plaintiff's registered marks and likely to cause confusion—confirms the continuing validity of Plaintiff's DEAN & DELUCA Registrations and the source-identifying significance of the DEAN & DELUCA Marks.

65. Defendants have no right to use the DEAN & DELUCA Marks or any confusingly similar marks in connection with any goods or services. Defendants have no right to register DEAN & DELUCA-formative marks for the goods and services identified in their pending trademark applications or otherwise. The USPTO has already reached that conclusion, refusing registration of Fire Brands' applications based on a likelihood of confusion with Plaintiff's DEAN & DELUCA Registrations.

66.     Plaintiff is entitled to a declaration under 28 U.S.C. § 2201 that: (a) Plaintiff's DEAN & DELUCA Registrations are valid and subsisting; (b) the DEAN & DELUCA Marks have not been abandoned; (c) Plaintiff is the owner of the DEAN & DELUCA Marks and the goodwill associated therewith; and (d) Defendants have no right to use or register DEAN & DELUCA-formative marks for any goods or services.

67.     Plaintiff is also entitled to relief under 15 U.S.C. § 1119, including cancellation of any registrations for DEAN & DELUCA-formative marks issued to or acquired by Defendants, and any other relief that the Court deems appropriate with respect to Defendants' pending trademark applications.

### COUNT II
### Trademark Infringement
### (15 U.S.C. § 1114(1))

68.     Plaintiff repeats and incorporates by reference the allegations set forth in the preceding paragraphs, as if expressly set forth herein.

69.     Plaintiff is the owner of the DEAN & DELUCA Registrations, which are valid and incontestable, as set forth above.

70.     Defendants, without authorization, used in commerce reproductions, counterfeits, copies, or colorable imitations of Plaintiff's DEAN & DELUCA Marks in connection with the sale, offering for sale, distribution, or advertising of goods or services, in a manner likely to cause confusion or deception as to the affiliation, connection, or association with Plaintiff, in violation of 15 U.S.C. § 1114.

71.     Each Defendant is liable for the use in commerce of the infringing DEAN & DELUCA Marks on goods sold at retail.  Village Super Market is liable based on its direct use of the infringing marks in connection with the manufacture, packaging, distribution, marketing,

offering for sale, and sale of food products at its retail locations and through distribution to third-party retailers.  Fire Brands is liable based on its own use in commerce of the infringing marks through its authorized licensee Village Super Market, and through its direction of, control over, and material participation in the adoption, development, and use of those marks.  In the alternative, Fire Brands is liable for contributory trademark infringement under 15 U.S.C. § 1114, in that it knowingly induced and materially contributed to Village Super Market's infringing use by, among other things, applying for and prosecuting trademark registrations for DEAN & DELUCA-formative marks for use on the products sold at Village Super Market's retail locations, exercising control over the branding, labeling, packaging, and QR-code-linked content used in connection with those products, and continuing that conduct after Plaintiff publicly asserted its continuing rights in the DEAN & DELUCA Marks, including in proceedings before the TTAB.

72.    Defendants' acts of infringement have been willful, deliberate, and with full knowledge of Plaintiff's rights.

73.    As a direct and proximate result of Defendants' trademark infringement, Plaintiff has suffered and will continue to suffer irreparable harm, including loss of control over its trademarks, damage to its reputation and goodwill, and monetary damages in an amount to be determined at trial.

74.    Plaintiff is entitled to injunctive relief, disgorgement of Defendants' profits, damages, and all other remedies available under the Lanham Act, 15 U.S.C. §§ 1114, 1116, 1117, and 1125, as well as attorneys' fees and costs to the extent permitted by law.

## COUNT III
### Trademark Dilution and Tarnishment
### (15 U.S.C. § 1125(c))

75.    Plaintiff repeats and incorporates by reference the allegations set forth in the

28

preceding paragraphs, as if expressly set forth herein.

76.    Plaintiff's DEAN & DELUCA Marks are famous and distinctive under 15 U.S.C. § 1125(c), including because they have been in continuous use for nearly five decades, have been the subject of extensive consumer exposure, media coverage, promotion, and recognition across the United States, and have been widely recognized by the general consuming public as designating a single source of goods and services.

77.    Defendants, without authorization or consent from Plaintiff, have used in commerce identical or substantially indistinguishable infringing DEAN & DELUCA Marks in connection with the sale, offering for sale, promotion, and marketing of food products.

78.    Defendants' unauthorized use began well after Plaintiff's DEAN & DELUCA Marks became famous.

79.    Defendants' unauthorized use of the DEAN & DELUCA Marks is likely to dilute the distinctiveness of Plaintiff's famous DEAN & DELUCA Marks by tarnishment, in violation of 15 U.S.C. § 1125(c), by associating Plaintiff's luxury brand—built over nearly five decades as a hallmark of premium, curated gourmet products—with mass-market, ordinary grocery items such as pre-cut vegetables sold at supermarket chains, thereby diminishing the premium associations and reputation that the DEAN & DELUCA Marks embody.  That tarnishment is aggravated by the fact that, on information and belief, the products bearing the infringing DEAN & DELUCA Marks are substantially the same mass-market products that Defendants previously sold under a different brand name; Defendants simply substituted Plaintiff's famous DEAN & DELUCA Marks onto their existing commodity products without any change in quality, sourcing, or presentation to reflect the premium standards associated with the DEAN & DELUCA Marks and brand.

80. Defendants' unauthorized use of the DEAN & DELUCA Marks is also likely to dilute the distinctiveness of Plaintiff's famous DEAN & DELUCA Marks by blurring, in violation of 15 U.S.C. § 1125(c), by creating an association between the DEAN & DELUCA Marks and Defendants' products that impairs the capacity of the DEAN & DELUCA Marks to identify and distinguish Plaintiff's goods and services.

81. Defendants' conduct has been willful, deliberate, and in bad faith.

82. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer irreparable injury to the distinctiveness, goodwill, and value of the DEAN & DELUCA Marks, for which there is no adequate remedy at law.

83. Plaintiff is entitled to injunctive relief, Defendants' profits, damages, costs, attorneys' fees, and any other relief that the Court deems just and proper.

## COUNT IV
### False Designation of Origin and Unfair Competition
### (15 U.S.C. § 1125(a))

84. Plaintiff repeats and incorporates by reference the allegations set forth in the preceding paragraphs, as if expressly set forth herein.

85. Defendants' use in commerce of the infringing DEAN & DELUCA Marks in connection with the marketing, promotion, offering for sale, and sale of food products constitutes a false designation of origin and a false or misleading description or representation of fact, and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' goods by Plaintiff, in violation of 15 U.S.C. § 1125(a). Defendants' conduct also constitutes passing off; Defendants have used, and continue to use, infringing DEAN & DELUCA Marks to pass off their goods as those of Plaintiff, thereby falsely designating the origin of their products.

30

86.    For the reasons set forth in Count II, Village Super Market is liable for direct violation of 15 U.S.C. § 1125(a); Fire Brands is liable based on its own use in commerce through its authorized licensee Village Super Market and on its direction of and control over the infringing conduct; and, in the alternative, Fire Brands is liable for contributory violation of 15 U.S.C. § 1125(a).

87.    Defendants' conduct is willful and intended to trade upon the goodwill of Plaintiff's DEAN & DELUCA Marks.

88.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer irreparable injury to its business, goodwill, and reputation, for which there is no adequate remedy at law.

89.    Plaintiff has been damaged in an amount to be determined at trial, and is entitled to recover Defendants' profits, Plaintiff's actual damages, costs, and attorneys' fees under 15 U.S.C. § 1117(a).

## COUNT V
**Trademark Infringement and Unfair Competition Under New York Common Law**

90.    Plaintiff repeats and incorporates by reference the allegations set forth in the preceding paragraphs, as if expressly set forth herein.

91.    Plaintiff has used the DEAN & DELUCA Marks in commerce in New York since at least 1977 and has developed substantial goodwill and consumer recognition in the Marks.

92.    Defendants' unauthorized use of the DEAN & DELUCA Marks on competing food products, and their bad-faith misappropriation of the goodwill associated with those marks, constitute trademark infringement and unfair competition under the common law of the State of New York.

93.    Defendants' unauthorized use of the DEAN & DELUCA Marks is likely to cause,

and has caused, confusion, mistake, and deception of the public as to the identity, origin, and source of Defendants' products.

94.    Defendants' conduct also constitutes passing off under New York common law, in that Defendants have used, and continue to use, the infringing DEAN & DELUCA Marks in a manner that is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' goods, thereby falsely designating the origin of their goods and passing them off as those of Plaintiff.

95.    Defendants' conduct is willful and intended to reap the benefit of the goodwill associated with Plaintiff's DEAN & DELUCA Marks.

96.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer irreparable injury to its business, goodwill, and reputation, for which there is no adequate remedy at law.

97.    Plaintiff has been damaged in an amount to be determined at trial.

98.    Plaintiff is entitled to injunctive relief, damages, disgorgement of Defendants' profits, and any other relief that the Court deems just and proper.

**COUNT VI**
**Deceptive Acts and Practices**
**(N.Y. Gen. Bus. Law § 349)**

99.    Plaintiff repeats and incorporates by reference the allegations set forth in the preceding paragraphs, as if expressly set forth herein.

100.    Defendants' conduct in using the infringing DEAN & DELUCA Marks on food products offered to consumers at retail grocery stores, together with QR-code-linked website content falsely suggesting an affiliation with Plaintiff, constitutes consumer-oriented conduct that is materially misleading in the conduct of business, trade, and commerce under N.Y. Gen. Bus.

Law § 349.

101.    Defendants' deceptive conduct has caused, and is likely to continue to cause, actual injury to Plaintiff.  Defendants' use of the infringing DEAN & DELUCA Marks on mass-market food products, combined with QR-code-linked content that falsely invokes Plaintiff's brand history, deceives consumers at the point of sale and after purchase about the origin, history, and affiliation of Defendants' products.  Defendants' deception extends beyond ordinary point-of-sale source confusion.  The QR-code-linked website content affirmatively misrepresents to consumers the heritage, provenance, and identity of the products by invoking the history of the genuine DEAN & DELUCA brand to which the products have no legitimate connection.  That post-sale and ongoing deception conditions consumers to attribute to Plaintiff responsibility for the products' quality, sourcing, and presentation; misrepresents to a broad consumer audience the origin and history of products bearing the famous DEAN & DELUCA Marks; and inflicts injury on the New York consuming public that is distinct from, and substantial in addition to, the ordinary trademark-infringement injury suffered by Plaintiff.  That deception diminishes the value of Plaintiff's existing and prospective licensing arrangements for authorized use of the DEAN & DELUCA Marks—including with Plaintiff's authorized licensee in Hawaii and with other third parties to whom Plaintiff has licensed or may license the DEAN & DELUCA Marks.  Defendants' unauthorized use also directly undermines Plaintiff's exclusive control over the DEAN & DELUCA Marks.  That control includes Plaintiff's right to determine who may use the marks, on what terms, and in connection with what products and services, as well as Plaintiff's right to control its own use of the marks and use by its related companies and authorized licensees.  Defendants' conduct further diminishes the value of Plaintiff's existing authorized use of the DEAN & DELUCA Marks by creating consumer confusion, diluting the distinctiveness of the marks,

tarnishing the brand's premium associations, and associating the brand with products and retail channels that Plaintiff did not select and does not control.

102.    Defendants' deceptive conduct also injures Plaintiff by placing the DEAN & DELUCA Marks on food products whose quality, sourcing, and production Plaintiff does not and cannot control, depriving Plaintiff of the ability to maintain the quality standards and brand integrity on which consumer perception of the DEAN & DELUCA brand depends.

103.    Plaintiff has been damaged by Defendants' deceptive conduct in an amount to be determined at trial.

104.    Plaintiff is entitled to injunctive relief, damages, and any other relief that the Court deems just and proper.

## COUNT VII
### Dilution
### (N.Y. Gen. Bus. Law § 360-l)

105.    Plaintiff repeats and incorporates by reference the allegations set forth in the preceding paragraphs, as if expressly set forth herein.

106.    Plaintiff's DEAN & DELUCA Marks are distinctive marks that have long acquired substantial goodwill, selling power, and source-identifying significance in New York and throughout the United States.

107.    Defendants, without authorization or consent from Plaintiff, have used the DEAN & DELUCA Marks and brand in connection with the marketing, promotion, offering for sale, and sale of Defendants' food products.

108.    Defendants' unauthorized use of the DEAN & DELUCA Marks and brand is likely to dilute the distinctive quality of Plaintiff's DEAN & DELUCA Marks and to injure Plaintiff's business reputation, in violation of N.Y. Gen. Bus. Law § 360-l.  Under § 360-l, likelihood of

dilution or injury to business reputation is actionable notwithstanding the absence of direct competition or confusion.

109.    Defendants' use is likely to dilute the distinctive quality of the DEAN & DELUCA Marks both by blurring the singular association between those marks and Plaintiff, and by tarnishing the premium reputation of the DEAN & DELUCA brand through association with mass-market grocery products that Plaintiff did not authorize and does not control, including by associating the DEAN & DELUCA Marks and brand with commodity products and packaging that are inconsistent with the premium brand standards consumers have long associated with the DEAN & DELUCA Marks and brand.

110.    That injury is amplified by Defendants' dilutive conduct in the New York City metropolitan area—the very market in which the DEAN & DELUCA brand originated and where consumer recognition of and goodwill in the DEAN & DELUCA Marks remain particularly substantial—threatening to shape consumer expectations and brand associations based on products Plaintiff did not authorize and does not control.  That injury includes diminution of Plaintiff's exclusive right to control the use of the DEAN & DELUCA Marks, including by Plaintiff, Plaintiff's related companies, and Plaintiff's authorized licensees.

111.    Defendants' conduct has caused, and unless enjoined will continue to cause, injury to the distinctiveness, goodwill, and reputation of the DEAN & DELUCA Marks.

112.    Plaintiff is entitled to injunctive relief and any other relief that the Court deems just and proper.

**COUNT VIII**
**False Advertising**
**(N.Y. Gen. Bus. Law § 350)**

113.    Plaintiff repeats and incorporates by reference the allegations set forth in the

35

preceding paragraphs, as if expressly set forth herein.

114.    Defendants, in the conduct of business, trade, and commerce in New York, have advertised, marketed, promoted, offered for sale, and sold food products using the infringing DEAN & DELUCA Marks and brand without authorization from Plaintiff.

115.    Defendants' packaging, labeling, and QR-code-linked website content for the accused products are false and misleading in a material respect because they falsely suggest that Defendants' accused products are genuine DEAN & DELUCA products or are otherwise affiliated with, sponsored by, or authorized by Plaintiff.

116.    Defendants' false advertising is consumer-oriented and is likely to mislead a reasonable consumer acting reasonably under the circumstances, in violation of N.Y. Gen. Bus. Law § 350.

117.    As a direct and proximate result of Defendants' false advertising, Plaintiff has suffered and continues to suffer actual injury.  Defendants' false and misleading packaging and labeling cause consumers to attribute to Plaintiff responsibility for products whose quality, sourcing, and production Plaintiff does not and cannot control, thereby injuring Plaintiff's goodwill, reputation, and the value of the DEAN & DELUCA Marks and brand.  That injury is exacerbated by Defendants' false advertising in the New York City metropolitan area, the market in which the DEAN & DELUCA brand originated and where the DEAN & DELUCA Marks retain particular consumer recognition and goodwill, shaping consumer expectations and brand associations based on products Plaintiff did not authorize and does not control.  That injury includes diminution of Plaintiff's exclusive right to control the use of the DEAN & DELUCA Marks, including by Plaintiff, Plaintiff's related companies, and Plaintiff's authorized licensees.

118.    Plaintiff has been damaged by Defendants' false advertising in an amount to be

36

determined at trial.

119.    Plaintiff is entitled to injunctive relief, damages, and any other relief that the Court deems just and proper.

### COUNT IX
### Unjust Enrichment

120.    Plaintiff repeats and incorporates by reference the allegations set forth in the preceding paragraphs, as if expressly set forth herein.

121.    In the alternative to Plaintiff's other claims for relief, and to the extent that those claims do not fully compensate Plaintiff, Defendants have been unjustly enriched at Plaintiff's expense by their unauthorized use of the DEAN & DELUCA Marks and brand to market and sell food products, thereby appropriating for themselves the goodwill, consumer recognition, brand equity, and commercial value that Plaintiff developed over nearly five decades of continuous use.

122.    Defendants obtained that benefit without authorization, without a license, and without compensating Plaintiff.  Had Defendants sought to use the DEAN & DELUCA Marks legitimately, they would have needed to obtain a license from Plaintiff.  Instead, Defendants simply took the value of the DEAN & DELUCA Marks and brand for their own commercial benefit.

123.    That inequity is aggravated by Defendants' use of the infringing DEAN & DELUCA Marks and brand in connection with retail food sales in New York City—the very market where the DEAN & DELUCA brand originated and where the DEAN & DELUCA Marks retain substantial residual goodwill—further increasing the value Defendants have extracted from the DEAN & DELUCA Marks and brand.  That inequity includes Defendants' usurpation of Plaintiff's exclusive right to control the use of the DEAN & DELUCA Marks, including by Plaintiff, Plaintiff's related companies, and Plaintiff's authorized licensees.

124.    It would be inequitable and against good conscience to permit Defendants to retain

the benefits of their unauthorized exploitation of the DEAN & DELUCA Marks and brand.

125.    Plaintiff is entitled to disgorgement of Defendants' profits and other equitable relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor and against Defendants as follows:

a)    Entering judgment for Plaintiff and against Defendants on all Counts of this Complaint;

b)    Permanently enjoining Defendants, and their officers, agents, employees, successors, assigns, and all persons acting in concert or participation with them, from using a DEAN & DELUCA Mark—or any confusingly similar mark, name, designation, or representation—in connection with any goods or services, including the manufacture, production, packaging, labeling, marketing, promotion, distribution, supply, offering for sale, or sale of any products bearing such marks, whether at Village Super Market's own retail locations, through Defendants' distribution to third-party retailers, or through any other channel of trade. Further permanently enjoining Defendants from using any packaging, labeling, advertising, website content, QR-code-linked website content, or other promotional materials that falsely suggest any affiliation, connection, sponsorship, approval, or origin involving Plaintiff;

c)    Ordering Defendants to deliver for destruction, deletion, or other appropriate disposition all products, packaging, labels, signs, advertising materials, webpages, QR-code-linked content, digital assets, and other materials in their possession, custody, or control bearing a DEAN & DELUCA Mark or any confusingly similar mark, or otherwise falsely suggesting an affiliation with Plaintiff;

d)        Ordering Defendants to identify all third-party retailers, distributors, or other entities to which Defendants have supplied, distributed, or sold products bearing a DEAN & DELUCA Mark or any confusingly similar mark, and to notify each such entity in writing that the products bear marks used without authorization and must be removed from sale, returned, or destroyed;

e)        Declaring that Plaintiff's DEAN & DELUCA Registrations are valid and subsisting, that the DEAN & DELUCA Marks have not been abandoned, that Plaintiff is the owner of the DEAN & DELUCA Marks, and that Defendants have no right to use or register DEAN & DELUCA-formative marks for any goods or services;

f)        Ordering Defendants to withdraw, abandon, or take all actions necessary to terminate any pending trademark applications for DEAN & DELUCA-formative marks; ordering the cancellation of any registrations for DEAN & DELUCA-formative marks issued to or acquired by Defendants; and awarding such further relief under 15 U.S.C. § 1119 as the Court deems appropriate;

g)        Ordering Defendants to provide a full accounting of all revenues, profits, costs, and other financial information relating to the manufacture, distribution, and sale of products bearing a DEAN & DELUCA Mark or any confusingly similar mark, including identification of all retail locations, third-party distributors, and other channels through which such products were distributed or sold;

h)        Awarding Plaintiff Defendants' profits attributable to their infringement;

i)        Awarding Plaintiff its actual damages caused by Defendants' infringement;

j)        Awarding Plaintiff enhanced damages and/or Defendants' profits to the extent authorized by 15 U.S.C. § 1117(a) and New York law, including on account of Defendants'

39

willful infringement, false designation, and dilution;

k)    Awarding Plaintiff actual damages, statutory damages, and treble damages under N.Y. Gen. Bus. Law §§ 349(h) and 350-e(3) on account of Defendants' willful conduct, together with reasonable attorneys' fees;

l)    Declaring this an exceptional case and awarding Plaintiff its reasonable attorneys' fees and costs under 15 U.S.C. § 1117(a);

m)    Awarding Plaintiff pre-judgment and post-judgment interest on any monetary award; and

n)    Awarding Plaintiff such other and further relief as this Court deems just and equitable.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  May 1, 2026
New York, New York

NUTTER MCCLENNEN & FISH, LLP


By:  *s/ Jordana A. Garellek*
Jordana A. Garellek
655 Third Avenue
New York, NY 10017
Telephone:  (646) 440-8000
jgarellek@nutter.com

Benjamin M. Stern (*pro hac vice* forthcoming)
155 Seaport Boulevard
Boston, MA 02210
Telephone:  (617) 439-2000
bstern@nutter.com

*Attorneys for Plaintiff*
*Dean & DeLuca Brands, Inc.*