UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEAN & DELUCA BRANDS, INC.,

Plaintiff,

v.

FIRE BRANDS INNOVATION, LLC and VILLAGE SUPER MARKET, INC.,

Defendants.

26-CV-3619 (DEH) (RFT)

**STIPULATION AND ~~[PROPOSED]~~ ORDER ESTABLISHING ELECTRONIC DISCOVERY PROTOCOL**

Plaintiff Dean & DeLuca Brands, Inc. and Defendants Fire Brands Innovation, LLC and Village Super Market, Inc. (individually a "Party" and collectively the "Parties") hereby stipulate to the following protocol regarding the collection, review, and production of electronically stored information in the above-captioned case (the "Litigation").

**A. Definitions.**

1. "Electronically stored information" or "ESI" means computer-generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, tapes, cloud storage or other real or virtualized devices or media. In the event that any Party identifies a particular source of responsive data for which application of this Order would be unduly burdensome or impractical, the Party identifying the source will promptly notify the other Parties and the Parties will meet and confer concerning appropriate modifications of this Protocol with respect to that source.
2. "Extracted Text" means the text extracted from a document, and includes all header, footer, and document body information.

3. “Media” means an object or device, including but not limited to a disc, tape, computer, drive, cloud storage, or other device, whether or not in the producing Party’s physical possession, on which data is or was stored.

4. “Metadata” means information about other information or data about other data, and includes without limitation (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage, and/or validity of the electronic file; and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

5. “Native Format” means the format of ESI in which it was generated and/or as used by the producing Party in the usual course of its business and in its regularly conducted activities.

**B. Cooperation.** The Parties are expected to reach agreements cooperatively on how to conduct discovery under the Federal Rules of Civil Procedure. The Parties will work cooperatively to fashion reasonable, precise, and cost-effective search strategies, including reasonable and proportional search terms and custodians, and to agree upon and implement appropriate measures for quality assurance and quality control. The Parties are obliged to be forthcoming and transparent in disclosing their use of mechanized tools to cull responsive data and encouraged to bring technically adept personnel together to resolve e- discovery issues. The Parties shall cooperate to identify and undertake reasonable efforts to facilitate access to the contents of encrypted, password-protected, corrupted, or difficult-to-access files produced.

**C. Proportionality.** The Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information. This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues. At the discretion of the Court, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, at the discretion of the Court, other litigation conduct, including a Party's nonresponsive or dilatory discovery tactics, or a Party's meaningful compliance with this protocol and efforts to promote efficiency and reduce costs, may be considered in cost-shifting determinations.

**D. Custodians.** By no later than October 9, 2026, each Party shall disclose the following information:

1. Custodians: The identification of persons with material knowledge relevant to the Litigation and who are likely to have discoverable ESI or paper documents in their possession, custody, or control ("Custodians"). The Custodians shall be identified by name, title, connection to the Litigation, and the type of information under his/her control. This designation of the initial Custodians is without prejudice to the right of a Party to identify custodians of the other Party to determine whether such identified Custodian(s) possess information or knowledge relevant to the subject matter of the Litigation. The Parties will work in good faith to avoid duplication or redundancy in designating or identifying custodians. ESI for additional Custodians may be searched only after the Parties meet-and-confer on why searches of additional identified Custodians and is likely to yield relevant and non-duplicative ESI,

the requesting Party shall have the ultimate burden on this issue and non-requesting Pary shall not unreasonably withhold consent for such additional Custodians.

2. Non-custodial Data Sources: A list of known non-custodial data sources (e.g., shared drives, servers, etc.), if any, likely to contain discoverable ESI. As discovery is only beginning, the Parties expressly reserve the right to request inclusion of additional data sources as discovery progresses. To the extent the Parties cannot reach agreement on the addition of any particular data source, the Party seeking production from such data source must show good cause before obtaining an order requiring production from that data source.

**E. Use of Search Terms.** The Parties agree that each producing Party will take reasonable steps to identify, review, and produce relevant ESI. The Parties may apply search terms to collected data and documents as a mechanism to identify responsive or potentially responsive documents, but they are not required to do so. The use of search terms shall be governed by the following:

1. If the producing Party elects to use search terms to locate potentially responsive ESI for certain data sources and/or Custodians, it shall disclose the search terms and the data sources and/or custodians to which it will apply those search terms to the requesting Party.

2. The receiving Party may request that the producing Party apply additional search terms to ESI. The Parties agree that in the event of a claim that a particular requested search term or combination of terms is too burdensome, the producing Party will provide information showing the number of non-

duplicative document-level "hits" (i.e., document-level "hits" that have not already been identified in accordance with Section E.1) for each such term or combination of terms, and agree to work in good faith to resolve such issues on a case-by-case basis. The Parties shall meet and confer on any modifications to the proposed terms needed to improve their efficacy in locating discoverable information and in excluding information that is not proportional to the needs of the case under Fed. R. Civ. P. 26(b), including modifying terms where the burden or expense of the proposed terms outweighs the likely benefit.

3. The Parties reserve their right to raise with the Court any dispute regarding the use of search terms.

4. The appearance of a search term in a particular email or document shall not be dispositive of whether that document is responsive or whether it must be produced.

**F. General Document Image Format**. Subject to Section K, all ESI shall be produced as single-page Group IV compression TIFF images using a print setting of at least 300 DPI, along with an image load/cross reference file, a data load file with fielded metadata, and document-level extracted text for ESI or OCR text for scanned hard copy documents and non-searchable ESI. Details regarding requirements, including files to be delivered in native format, are below. TIFF and JPEG files shall be a single page and shall be named with a unique production number followed by the appropriate file extension. All such images shall be sequentially Bates numbered using a consistent length with leading zeroes in the number. The format of the Bates numbers shall not change across productions. A load file shall be provided to

indicate the location and unitization of the TIFF and JPEG files. The file should use the Concordance Image Viewer (.OPT) format. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document. Reasonable care shall be taken not to degrade the legibility of documents during the imaging process. If legibility is found to have been degraded, the receiving Party may make reasonable requests for reproduction of these documents and the producing Party shall reproduce legible documents when possible. Documents containing color need not initially be produced in color. The producing Party will honor reasonable requests for a color image of a document, if the original document contains color necessary to understand the meaning or content of the document.

**G. Edits and Annotations to Documents.** ESI shall be produced reflecting track changes and comments, if any, and all documents that contain comments, deletions and revision marks (including the identity of the person making the deletion or revision and the date and time thereof, to the extent such identities have not been anonymized or removed in the original document), speaker notes, or other user-entered data that the source application can display will be processed such that all that data is visible in the image.

**H. Metadata.** A data load file shall be provided with each production. The file shall be a Concordance-loadable data file (".DAT" file) and contain Bates-stamp and metadata information as detailed below. The .DAT file shall have a header line with the below listed field names and shall include the corresponding information, if any, for each applicable field to the extent such information is available for a document:

| Field | Comments | Document |
|---|---|---|
| BegBates | Beginning Bates number. | All. |
| EndBates | Ending Bates number. | All. |

| | | |
|---|---|---|
| BegRange | Bates number of first page of family range (*e.g.,* first page of an email). | All. |
| EndRange | Bates number of last page of family range (*e.g.,* last page of last attachment to an email). | All. |
| PageCount | Number of TIFF/JPEG image pages in the produced document. | All. |
| FileExtension | File extension of the original document (*e.g.*, .msg, .docx, .jpg). | All. |
| FileSize | File size of the original document. Format: bytes. | All. |
| Title | Title of the original document. | Loose files and attachments. |
| Custodian | Custodian full name. Format: LASTNAME, FIRSTNAME. | All. |
| AllCustodian | Full name of all custodians for whom the document is being produced. Format: LASTNAME, FIRSTNAME; | All. |
| Author | Author of document from available metadata. | Loose files and attachments. |
| LastSavedBy | Last Saved By field value extracted from metadata of a native file. | Loose files and attachments. |
| Company | Company field extracted from the metadata of a native file. | Loose files and attachments. |
| From | Email author. | Email only. |
| To | Email addressee(s). | Email only. |
| CC | Email addressee(s), carbon copy. | Email only. |
| BCC | Email addressee(s), blind carbon copy. | Email only. |
| Subject | Email subject. | Email only. |
| DateCreated | File creation date. Format: MM/DD/YYYY. | All. |
| TimeCreated | File creation time. Format: HH:MM:SS AM/PM | All. |
| DateModified | File modification date. Format: MM/DD/YYYY. | All. |
| TimeModified | File modification time. Format: HH:MM:SS AM/PM | All. |
| DateSent | Email sent date. Format: MM/DD/YYYY. | Email only. |
| TimeSent | Email sent time. HH:MM:SS AM/PM. | Email only. |
| DateReceived | Email received date. MM/DD/YYYY. | Email only. |

| | | |
|---|---|---|
| TimeReceived | Email received time. HH:MM:SS AM/PM. | Email only. |
| DateAccessed | Date document was last accessed. | All. |
| TimeAccessed | Time document was last accessed. | All. |
| MeetingStartDate | Start date of calendar appointment. Format: MM/DD/YYYY | Calendar items only. |
| MeetingStartTime | Start time of calendar appointment. Format: HH:MM:SS AM/PM | Calendar items only. |
| MeetingEndDate | End date of calendar appointment. Format: MM/DD/YYYY | Calendar items only. |
| MeetingEndTime | End date of calendar appointment. Format: HH:MM:SS AM/PM | Calendar items only. |
| TimeZone | The time zone in which files were standardized during processing (*e.g.*, GMT). | All. |
| MessageID | Globally unique identifier for a message which typically includes messageid and a domain name (*e.g.*, | Email only. |
| ConversationIndex | Email thread identification. | Email only. |
| Importance | Email flag indicating priority level set for message. | Email only. |
| Sensitivity | Sensitivity field from email messages. | Email only. |
| FileName | Name of file as maintained in the ordinary course of business. | Loose files and attachments. |
| FilePath | Original path to the file or email message. | All. |
| AllFilePaths | For globally and within custodian de-duplicated productions. Folder paths to this document's duplicates | All. |
| HiddenContent | Denotes if file contains hidden content. Format: Yes/No value. | Loose files and attachments. |
| MD5Hash | Unique file identifier. | All. |
| TextPath | The production deliverable path to the extracted text or OCR for the document, including the file name. | All. |
| NativePath | The production deliverable path to the native-format file for the document, including the file name (if a | Loose files and attachments. |

**I. Text-Searchable Documents.** Extracted text and/or OCR text shall be provided for all documents as separate, document-level text files; extracted text and/or OCR text shall not be embedded in the .DAT file (as defined below). Full extracted text shall be provided wherever possible. Where extracted text cannot be provided, OCR text shall be provided. Notwithstanding

the above, redacted text will not be produced. OCR text shall be provided for all redacted documents in lieu of extracted text. If a document is provided in native format with a single-page placeholder TIFF image (e.g., spreadsheet files), the text file shall contain the full extracted text of the native file. Document-level text file names shall consist of the beginning Bates number information of the document. The Parties agree not to degrade the searchability of documents knowingly as part of the document production process. For example, extracted text should not be replaced by OCR text except where appropriate (e.g., OCR for redacted documents).

**J.** **Footer**. Each document image shall contain a footer with a sequentially ascending production number ("Bates Number").

**K.** **Native Files**. Notwithstanding the foregoing, to the extent a producing Party produces video, animation, audio files, or Excel/Other Spreadsheet file, such documents shall be produced in their native format. The producing Party will produce a slipsheet in TIFF format corresponding to the document that is produced in native format. The .DAT load file shall contain a link to the path of the Native File, which shall be named to correspond to the Bates number of the TIFF image placeholder. The .DAT load file shall also contain all Metadata fields as set forth in Section H, above. To the extent feasible, native files should be produced with native redactions. Each Party will retain native electronic source documents for all ESI produced in the Litigation, and will use reasonable measures to maintain the original native source documents in a manner so as to preserve the metadata associated with these electronic materials as it existed at the time of the original production in the event the review of such metadata becomes necessary. Notwithstanding this requirement to retain native electronic source documents, a producing Party need not produce documents in native format except as specifically set forth above. If good cause exists for the receiving Party to request production of

certain ESI in native format, the receiving Party may request production in native format by providing: (1) a list of the Bates numbers of documents it requests to be produced in native format; and (2) an explanation of the need for reviewing such documents in native format. The producing Party shall not unreasonably deny such requests if the receiving Party has demonstrated good cause for receiving the ESI in native format. Each file produced in response to such requests will be produced to the extent possible consistent with the format in this Section K.

**L. Parent-Child Relationships.** Parent-child relationships (*i.e.*, the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved. Except with respect to documents withheld on privilege grounds, all document family relationships shall be produced together and children files should follow parent files in sequential Bates number order. For example, if a Party is producing a hard copy printout of an email with its attachments, the attachments should be processed in order behind the email as separate documents. In addition, documents that are part of document families containing parents and attachments must receive a "BegAttach" and "EndAttach" designation.

**M. Databases**. Certain types of databases are dynamic in nature and may contain information that is not relevant to any party's claim or defense or is not proportional to the needs of the Litigation. Thus, a Party may opt to produce relevant responsive information from databases in an alternate form such as a report or spreadsheet, but only after conducting a meet and confer with all other Parties about the appropriate form of the alternate production. These reports or spreadsheets will be produced in a static format.

**N. Production Media and Encryption of Productions**. Productions shall be

produced through secure electronic means, such as secure file sharing methods (*e.g.*, FTP), or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (*e.g.*, "VOL001"). Each piece of Production Media shall also identify: (1) the producing Party's name, (2) the production date, (3) the Bates number range of the materials contained on the Production Media. Passwords to access encrypted materials shall be transmitted separately from Production Media.

**O. Confidentiality.** The Parties' designations of ESI as "Confidential" or "Attorneys' Eyes Only" shall be governed by the Confidentiality Stipulation and Protective Order the Court enters in this action. Additionally, for any ESI designated "Confidential" or "Attorneys' Eyes Only" pursuant to the Confidentiality Stipulation and Protective Order the Court enters in this action, the designation shall be shown both on the face of all TIFFs and JPEGs pertaining to such item/document (including the slip sheet of any document produced in native format).

**P. De-Duplication**. The Parties shall use reasonable, good-faith efforts to avoid the production of duplicate ESI based upon MD5 Hash values or equivalent deduplication key. Each Party is required to produce only a single copy of a responsive document, but to the extent reasonably accessible, a listing of all custodians of the document from whom the document was collected must be in its metadata (if custodian information is available for the document).

**Q. Email Threading**. A Party may, but is not required to, de-duplicate email threads as follows: in an email thread for which a given last-in-time message is produced, any emails fully contained in that last-in-time message need not be separately produced; any separate "branches" from an email thread not fully contained by the last-in-time message must be separately produced. Where a prior email contains an attachment, that email and attachment must

be produced. All BCC recipients whose names would have been included in the BCC metadata field but are excluded because of global (horizontal) de-duplication, must be identified in the BCC metadata field. Notwithstanding the foregoing, a receiving Party may request metadata for any email message contained within a last-in-time email thread and may, upon a showing of good cause, request email messages contained within a last-in-time email thread.

**R.** A producing Party may utilize technology-assisted review, predictive coding, generative artificial intelligence, analytics, keyword searching, clustering, email threading, concept searching, active learning, or other automated or algorithmic tools in connection with the collection, processing, search, review, redaction, privilege review, or production of documents and ESI. The producing Party shall have sole discretion regarding the selection, configuration, implementation, and use of such tools and methodologies. No producing Party shall be required to disclose the identity, version, prompts, workflows, training materials, validation procedures, review protocols, quality control measures, precision rates, recall rates, elusion testing, or other details concerning the use of such tools absent a showing of good cause by the receiving Party or an order of the Court. The use of such technologies shall not, by itself, provide a basis for challenging the adequacy of a Party's collection, review, privilege determinations, or production.

**S.** **Privilege Logs.** The following parameters shall apply to the production of privilege logs:

1. Timing. At a reasonably prompt time to be agreed upon by the Parties, each Party shall provide a privilege log for electronic or hard-copy documents or things withheld or redacted on the grounds of attorney-client privilege, work product immunity, or other privilege or protection.
2. Contents. For the documents or things redacted or withheld, the Parties will meet

and confer about the scope and timing of privilege logs, including whether to permit the use of categorical or metadata logs as recommended by Local Rule 26.2(c).

**T. Hardcopy or Paper Files.** All documents that are hardcopy or paper files shall be scanned and produced in the same manner as documents existing in electronic format. A commercially acceptable technology for OCR shall be used for all scanned documents. OCR data is to be included as separate text files that are linked by a .dat file. If a document contains redactions, the OCR data shall not include the redacted portions of the document but shall include the remaining unredacted text.

**U. Foreign Language Documents**. All documents shall be produced in their original language. Where a requested document exists in a foreign language and the producing Party also has an English-language version of the document that it prepared for non-litigation purposes prior to filing of the lawsuit, the producing Party shall produce both the original document and any English-language versions. In addition, if the producing Party has a certified translation of a foreign- language document that is being produced (whether or not the translation is prepared for purposes of litigation), the producing Party shall produce both the original document and the certified translation. Nothing in this Order shall require a producing Party to prepare a translation, certified or otherwise, for foreign language documents that are produced in discovery or to produce a translation that is not certified and was prepared for the purposes of litigation.

**V. Reproduction of Third-Party ESI.** Notwithstanding anything to the contrary herein, any Party that produces documents produced to it by a third party, such as in response to a subpoena, may produce such documents in the format in which they were produced by the third party. Production of such materials is made pursuant to any confidentiality or other restrictions,

which must be communicated in writing prior to or at the time of production of the third party materials.

**W. Objections Preserved.** Nothing in this Order shall be interpreted to require disclosure of information protected by the attorney-client privilege, work-product doctrine, joint-prosecution privilege, common-interest privilege, or any other applicable privilege or immunity. The procedure for clawback of any documents shall be governed by the Confidentiality Stipulation and Protective Order the Court enters in this action. The Parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of documents and ESI.

**X. Not Limit Discovery Obligations.** Except as expressly stated, nothing in this Order affects the Parties' discovery obligations under the Federal or Local Rules. In addition, nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of its documents, ESI, or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production. Nothing in this Order shall eliminate or modify the Parties' supplementation obligations under the Federal Rules of Civil Procedure. Nothing in this Order shall prevent a Party from requesting supplemental production of specific categories ESI, but such requests shall not require a re-collection of ESI from a previously collected-from Custodian, absent agreement of the Parties or leave of Court.

The Clerk of Court is respectfully requested to terminate ECF 31.

Dated: September 28, 2026
New York, NY

SO ORDERED

ROBYN F. TARNOFSKY
UNITED STATES MAGISTRATE JUDGE

SO STIPULATED AND AGREED.

Dated: September 25, 2026
New York, NY

**NUTTER MCCLENNEN & FISH, LLP**

*s/ Benjamin M. Stern*
Benjamin M. Stern, Esq. (*pro hac vice*)
155 Seaport Boulevard
Boston, MA 02210
Telephone: (617) 439-2000
bstern@nutter.com

Jordana A. Garellek, Esq.
655 Third Avenue
New York, NY 10017
Telephone: (646) 440-8000
jgarellek@nutter.com

*Attorneys for Plaintiff*
*Dean & DeLuca Brands, Inc.*

**LOWENSTEIN SANDLER LLP**

*s/ Reynold Lambert*
Reynold Lambert, Esq.
1251 Avenue of the Americas
New York, New York 10020
Telephone: (973) 597-6340
rlambert@lowenstein.com

Barry I. Friedman, Esq.
METZ LEWIS BRODMAN MUST O'KEEFE LLC
444 Liberty Avenue
Suite 2100
Pittsburgh, PA 15222
Telephone: (412) 918-1110
Facsimile: (412) 918-1199
bfriedman@metzlewis.com

*Attorneys for Defendants Fire Brands Innovation, LLC and Village Super Market, Inc.*